IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GAIL ROBIN CHANDLER, | § | |
| **Plaintiff,** | § | |
| v. | § | Civil Action No. 3:22-CV-2076-BH |
| | § | |
| KILOLO KIJAKAZI, | § | |
| ACTING COMMISSIONER OF SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| **Defendant.** | § | Consent Case[1] |

## MEMORANDUM OPINION AND ORDER

Based on the relevant filings, evidence and applicable law, the final decision of the Commissioner of Social Security (Commissioner) denying the plaintiff's claims for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) is **AFFIRMED**.

## I.     BACKGROUND

Gail Robin Chandler (Plaintiff) filed her application for DIB under Title II of the Social Security Act on July 1, 2020, and for SSI under Title XVI on July 30, 2020, alleging disability beginning December 1, 2018. (R. at 311, 316, 348.)[2] Her claim was denied initially on January 7, 2021, and upon reconsideration on May 3, 2021. (R. at 82-216.) She testified at a telephonic hearing before an Administrative Law Judge (ALJ)on October 20, 2021. (R. at 49-81, 239.) On December 7, 2021, the ALJ issued a decision finding her not disabled. (R. at 17-21.) Plaintiff timely appealed the ALJ's decision to the Appeals Council on January 25, 2021. (R. at 230.) The Appeals Council denied her request for review on July 22, 2022, making the ALJ's decision the final decision of the Commissioner. (R. at 1.) She timely appealed the Commissioner's decision

---

[1] By consent of the parties and order filed February 16, 2023 (doc. 21), this matter has been transferred for the conduct of all further proceedings and the entry of judgment.

[2] The background information is summarized from the record of the administrative proceedings, which is designated as "R." (*See* docs. 18-1, 18-2.) Citations to the record refer to the page numbers at the bottom of each filing, however, citations to the parties' filings refer to the CM/ECF system page number at the top of each page.

under 42 U.S.C. § 405(g). (doc. 1.)

### A. Age, Education, and Work Experience

Plaintiff was born on September 14, 1964, and she was 54 years old on the alleged disability onset date. (R. at 311.) She had a limited education, with past relevant work as a home health aide, telephone operator, salesperson, and cashier. (R. at 55-59.)

### B. Psychological and Psychiatric Evidence

On September 15, 2020, Plaintiff completed a function work report, indicating that she could read and manage most of her personal hygiene tasks, although she had to be reminded to bathe. (R. at 365-772.) She was unable to concentrate and described her mind as "scattered". (R. at 365.) She did not prepare meals, and her family had said it was dangerous for her to cook. (R. at 367.) She lacked a driver's license, used public transportation, and needed assistance to go out. (R. at 368.) She had no money to manage. (*Id.*) She went to church and sang in the choir once or twice a month. (R. at 369.) She had difficulty concentrating, understanding, and completing tasks and did not handle stress or changes in routine well. (R. at 370-71.)

On October 21, 2020, Plaintiff underwent a psychological consultative examination, during which she complained of anxiety, depression, and post-traumatic stress disorder (PTSD). (R. at 545-48.) She was adequately groomed, reported a seventh-grade education, and had a history of anxiety, depression, suicidal ideation, and not getting along with others. (R. at 545-46.) She had just "com[e] off" a manic episode that kept her awake for 3 days, and she endorsed feeling a "little" depressed. (*Id.*) She had adequate speech and expressive language. (R. at 545.) A mental status examination revealed that she was "likely" able to complete simple and some complex tasks in an appropriate manner. (R. at 546.) Plaintiff had trouble with serial sevens but was able to perform simple math. (R. at 547.) She had an estimated average intelligence, demonstrated some reduced

memory but good concentration, exhibited adequate eye contact with no paranoia or delusional behavior, and was pleasant and cooperative. (R. at 545, 547.) She appeared capable of managing her personal hygiene needs and reported microwaving food and using public transportation. (R. at 552.) She was diagnosed with unspecified bipolar disorder. (R. at 548.)

On December 7, 2020, Plaintiff presented to the emergency room for a possible overdose. (R. at 564-68.) She reported a history of anxiety, bipolar disorder, and depression. (R. at 564.) She exhibited no paranoia or delusional behavior, and she was pleasant and cooperative. (R. at 566.)

On January 6, 2021, as part of the initial "administrative medical findings", state agency psychological consultant (SAPC) Sylvia Chen, Ph.D., completed a psychiatric review technique and a mental residual functional capacity (RFC) assessment based on a review of Plaintiff's medical records. (R. at 82-101). She found that Plaintiff was mildly limited in her ability to interact with others and to adapt or manage herself, but she was moderately limited in her ability to understand, remember, or apply information, as well as in her ability to concentrate, persist, or maintain pace. (R. at 89.) She opined that Plaintiff could "understand, remember, and carry out detailed but not complex instructions, make decisions, concentrate for extended periods, interact appropriately with others, and respond to changes in a work setting." (R. at 98.) SAPC Chen concluded that Plaintiff was capable of semi-skilled work. (R. at 99.)[3]

On May 24, 2021, Plaintiff presented to Metrocare Services for a psychological evaluation. (R. at 599.) She complained that she was "[n]ot doing good" and that she could not keep a job because of her mood. (*Id.*) She reported paranoia and hearing voices and a history of anxiety, bipolar disorder, and depression. (*Id.*) She was being treated at Parkland Hospital and was taking

---

[3] The state agency medical consultant (SAMC) who completed Plaintiff's physical RFC assessment on the initial administrative medical findings (First SAMC) found that Plaintiff was capable of medium work, with some postural limitations. (R. at 91-94); *see* 20 C.F.R. § 404.1567(c).

Depakote, Gabapentin, Celexa, Trazodone, and Vistaril, but she had been off Gabapentin for 2 weeks. (R. 599-01.) She was alert and oriented times four; she denied suicidal ideation; and she had intact recent and remote memory, normal attention and concentration, average fund of knowledge, anxious mood, and logical and organized thought content. (R. at 600.) She was diagnosed with bipolar I disorder, anxiety disorder, and alcohol abuse, and she was prescribed Celexa, Depakote, Vistaril, and Seroquel (R. at 600-01.)

On September 14, 2021, Plaintiff underwent imaging of her head. (R. at 852.) She had a history of substance abuse. (*Id.*)

On April 22, 2021, SAPC Jacob Tendler, M.D., reviewed Plaintiff's medical records and completed a mental medical evaluation, a psychiatric review technique, and a mental RFC assessment. (R. at 124-47.) He found that Plaintiff had a mild limitation in her ability to understand, remember, or apply information, but she had moderate limitations in her ability to interact with others, adapt or manage oneself, and concentrate, persist, or maintain pace. (R. at 134-35.) He found that she had "[n]o limitations in [her] capacity to understand and memorize simple instructions", she was not significantly limited in her "ability to carry out very short and simple instructions", she was "moderately limited" in her ability to interact appropriately with the general public, she "would fare best with only incidental contact with public and avoidance of prolonged interpersonal contacts", and she was "moderately limited" in her ability to respond appropriately to changes in the work setting. (R. at 140-42.)

SAPC Tendler further opined that Plaintiff was not significantly limited in her ability to "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods", but she was moderately limited in her ability to "perform activities within a schedule,

4

maintain regular attendance, and be punctual within customary tolerances". (R. at 140-41.) She was "able to maintain attendance and complete a normal workweek and maintain pace with occasional absences", to "maintain an acceptable level of attendance, and [to] adequately adapt to changes of routine, and to simple situations, not calling for rapid or extensive changes in work tasks or procedures". (R. at 141-42.) SAPC Tendler concluded that Plaintiff was capable of unskilled work. (R. at 144.)[4]

## C.  **October 20, 2021 Hearing**

On October 20, 2021, Plaintiff and an impartial VE testified at a hearing before the ALJ. (R. at 54-74.) Plaintiff was represented by an attorney. (*Id.*)

### 1.  *Plaintiff's Testimony*

Plaintiff testified that she was 57 years old, had a seventh-grade education, and could read and write in English. (R. at 54-55.) She worked at Walmart, where she split her time between organizing clothing in the ladies fitting room and answering and transferring telephone calls to other departments. (R. at 55-56, 59.)

From 2016 to 2018, Plaintiff worked as a home health care person, but she was never certified. (R. at 56.) She helped her client with grooming and meals and did some light housekeeping. (R. at 56-57.) Her job ended when her client moved to a nursing home. (*Id.*)

In early 2020, Plaintiff worked part-time as a cashier at the Dollar Store, where she also helped unload the delivery truck and stock items. (R. at 57.) She stopped working there due to the physical demands and because some client interactions had caused her panic attacks. (R. at 57-58.)

It had been a year since Plaintiff had used public transportation; she stopped riding the train

---

[4] The state SAMC who completed Plaintiff's physical RFC assessment upon reconsideration (Second SAMC) concurred with the first SAMC's opinion that Plaintiff was capable of medium work with some postural limitations. (R. at 136-39); *see* 20 C.F.R. § 404.1567(c).

after two incidents caused her panic attacks. (R. at 63.) Her license had been suspended 10 or 15 years earlier; her daughter or best friend drove her to her appointments or to get her medication refills. (R. at 64.) She was able to attend church, sing in the church choir, and spend time with others; her brother drove her every Sunday. (R at 67-68.) Her mother had taken care of her until her death a few years earlier, and her daughters had taken care of her since then. (R. at 70.)

On cross-examination, Plaintiff testified that despite her physical conditions, her "real" issue was mental illness. (R. at 69.) She was first diagnosed with bipolar disorder at age 18. (*Id.*) She had manic episodes, lost her train of thought, was "scattered", and talked fast at times. (R. at 70.) She got paranoid, did not like to be around a lot of people, and had been isolating "a lot". (R. at 70-71.) Her symptoms had gotten worse since she had stopped working at Dollar Tree, and she had "total" panic attacks daily or a few times a week. (R. at 71-72.)

*2. VE's Testimony*

The VE testified that Plaintiff had relevant past, semi-skilled work as a cashier-checker (DOT[5] 211.462-014, light, SVP-3); home health aide (DOT 354.377-014, medium, SVP-3); and a composite job of a telephone operator (DOT 235.662-022, sedentary, SVP-3) and a salesperson of women's apparel and accessories (DOT 261.357-066, light, SVP-3). (R. at 74-75.)

The VE first considered a hypothetical individual with Plaintiff's same age, education, and past work who could perform medium work, as defined by the regulations, with some postural limitations; understand, remember, and carry out simple tasks with short, simple instructions; make simple work-related decisions (or simple judgments); maintain attention, concentration, and pace sufficiently to perform simple work tasks; tolerate occasional workplace changes; and occasionally interact with the general public. (R. at 76.) The individual could not perform past work, but she

---

[5] DOT stands for Dictionary of Occupational Titles, and SVP stands for Specific Vocation Preparation.

6

could perform medium, unskilled, SVP-2 jobs, such as a marker (DOT 369.687-026) with over 557,000 jobs nationally; hospital cleaner (DOT 323.687-010) with over 924,000 jobs nationally; and hand packager (DOT 920.587-018) with over 663,000 jobs nationally. (*Id.*)

The VE's testimony was consistent with the DOT, except her testimony on break times and interactions with others was based on her knowledge, education, and training, as the DOT did not address those issues. (R. at 78.)

On cross-examination, the VE considered a hypothetical person, like the first, who would "occasionally" (about twice per month) be absent due to her health problems. (R at 80.)

> [F]or example, in the state of Texas, the first 60 to 90 days are considered probationary usually. And during that probationary period a hypothetical person can't miss any time. But if a person during that probationary period is missing two days, [she] wouldn't even make it through probationary period. But let's say [she] make[s] it through and then [she] start[s] missing two days a month at least, that would be considered excessive, and [she is] not going to be able to maintain employment if that's on a consistent basis.

(*Id.*)

## D.  **ALJ's Findings**

The ALJ issued her decision on December 7, 2021. (R. at 11-27.) At step one, she found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of December 1, 2018. (R. at 14.) At step two, she found that Plaintiff had the severe impairments of degenerative disc disease of the lumbar spine, obesity, major depressive disorder, bipolar disorder, and generalized anxiety disorder, as well as the non-severe impairments of hypertension, chronic obstructive pulmonary disease (COPD), and substance abuse. (*Id.*) She also found that PTSD was not a medically determinable impairment. (R. at 14-15.) At step three, the ALJ concluded that Plaintiff's impairments did not singularly or in combination meet or medically equal the required criteria for any of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (R. at 15.) She expressly considered Listings 1.15, 1.16, 12.04,

and 12.06 in her findings. (R. at 15-17.)

Next, the ALJ determined that Plaintiff retained the RFC to perform medium work, as defined in 20 C.F.R. §§ 404.1567(c), 416.967(c), with some postural limitations and the following mental limitations:

> [She] can understand, remember, and carry out simple tasks with short, simple instructions. She can make simple work-related decisions or judgments. She can maintain attention, concentration, and pace sufficiently to perform simple work tasks and can tolerate occasional workplace changes. She can have occasional interaction with general public.

(R. at 17-18.) At step four, the ALJ determined that Plaintiff was unable to perform her past work. (R. at 25.) At step five, the ALJ found that transferability of job skills was not material to the determination of disability because the Medical-Vocational Rules supported a finding that she was not disabled regardless of whether she had transferable job skills, but considering her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could perform. (R. at 26.) Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined by the Social Security Act, from the alleged onset date of December 1, 2018, through the date of her decision on December 7, 2021. (R. at 27.)

## II.   STANDARD OF REVIEW

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the

record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The scope of judicial review of a decision under the supplemental security income program is identical to that of a decision under the social security disability program. *Davis v. Heckler*, 759 F.2d 432, 435 (5th Cir. 1985). Moreover, the relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income. *See id.* The court may therefore rely on decisions in both areas without distinction in reviewing an ALJ's decision. *See id.*

To be entitled to social security benefits, a claimant must prove that he or she is disabled as defined by the Social Security Act. *Leggett*, 67 F.3d at 563-64; *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992) (citing 42 U.S.C. § 423(d)(1)(A)).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work [s]he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes h[er] from performing h[er] past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)).

Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## III.   RESIDUAL FUNCTIONAL CAPACITY

Plaintiff presents one issue for review:

The ALJ must reconcile the RFC finding with all conflicting opinion evidence. In this case, the ALJ formulated an RFC for medium, unskilled work based in part on the [SAMCs]' opinions, which the ALJ found "persuasive." However, [SAPC Tendler] predicted "occasional" workplace absences due to Plaintiff's bipolar disorder, and the VE testified employers prohibit any absences during the first 60-90 days of employment. Did the ALJ reversibly err by failing to reconcile this opinion with her RFC finding, which ignores absenteeism?

(doc. 23 at 5.)

10

Residual functional capacity, or RFC, is defined as the most that a person can still do despite recognized limitations. 20 C.F.R. § 416.945(a)(1). The RFC determination is a combined "medical assessment of an applicant's impairments with descriptions by physicians, the applicant, or others of any limitations on the applicant's ability to work." *Hollis v. Bowen*, 837 F.2d 1378, 1386-87 (5th Cir. 1988) (per curiam). It "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996). An individual's RFC should be based on all of the relevant evidence in the case record, including opinions submitted by treating physicians or other acceptable medical sources. 20 C.F.R. § 416.945(a)(3); SSR 96-8p, 1996 WL 374184, at *1.

The ALJ "is responsible for assessing the medical evidence and determining the claimant's [RFC]." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985). The ALJ may find that a claimant has no limitation or restriction as to a functional capacity when there is no allegation of a physical or mental limitation or restriction regarding that capacity, and no information in the record indicates that such a limitation or restriction exists. *See* SSR 96-8p, 1996 WL 374184, at *1. The ALJ's RFC decision can be supported by substantial evidence even if she does not specifically discuss all the evidence that supports her decision or all the evidence that she rejected. *Falco v. Shalala*, 27 F.3d 160, 163-64 (5th Cir. 1994). A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record. *Leggett*, 67 F.3d at 564.

Nevertheless, the substantial evidence review is not an uncritical "rubber stamp" and requires "more than a search for evidence supporting the [Commissioner's] findings." *Martin v. Heckler*, 748 F.2d 1027, 1031 (5th Cir. 1984) (citations omitted). The Court "must scrutinize the

record and take into account whatever fairly detracts from the substantiality of the evidence supporting the" ALJ's decision. *Id.* Courts may not reweigh the evidence or substitute their judgment for that of the Secretary, however, and a "no substantial evidence" finding is appropriate only if there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *See Johnson*, 864 F.2d at 343 (citations omitted).

Here, after careful consideration of the medical evidence of record, the ALJ determined that Plaintiff had the following mental RFC:

> [She] can understand, remember, and carry out simple tasks with short, simple instructions. She can make simple work-related decisions or judgments. She can maintain attention, concentration, and pace sufficiently to perform simple work tasks and can tolerate occasional workplace changes. She can have occasional interaction with general public.

(R. at 12-13, 17, 21-22.) In determining the RFC, the ALJ explicitly noted and directly considered Plaintiff's treatment records, imaging studies, the October 2020 psychological consultative examination, and the SAMCs and SAPCs' respective RFC assessments. (R. at 25.)

Plaintiff contends that the ALJ's RFC determination was not supported by substantial evidence because she rejected SAPC Tendler's limitation relating to Plaintiff's alleged occasional absences despite finding his opinion persuasive. (doc. 23 at 10.) SAPC Tendler opined that she was "able to maintain attendance and complete a normal workweek and maintain pace *with occasional absences*". (R. at 141.)

The ALJ did incorporate some of SAPC Tendler's limitations, i.e., Plaintiff had "[n]o limitations in [her] capacity to understand and memorize simple instructions", she was not significantly limited in her "ability to carry out very short and simple instructions", she was "moderately limited" in her ability to interact appropriately with the general public, she "would fare best with only incidental contact with public and avoidance of prolonged interpersonal contacts", she was "moderately limited" in her ability to respond appropriately to changes in the

12

work setting. (R. at 140-42.) Additionally, in articulating the persuasiveness of the opinions of the SAMCs and the SAPCs, the ALJ specifically considered SAPC Tendler's opinion as to Plaintiff's ability to perform unskilled work:

> [First SAMC], and [SAPC Chen], and [Second SAMC], and [SAPC Tendler's] [respective] assessments …, that [Plaintiff] could perform work consistent with a medium exertional level and unskilled are *persuasive*, as the evidence received at that time *supported* a medium [RFC], and the evidence received at the hearing level is *consistent* with such [RFC]. However, [SAPC Chen]'s opinion at the initial level that [Plaintiff] could perform detailed but not complex work is not persuasive, as [I] find[] that the psychological evidence received at the hearing level noting limited education and variable moods, which could reasonably render [Plaintiff] too distractible to perform detailed or complex tasks, and more is consistent with moderate limitations in understanding, remembering, and applying information, and reasonably results in an ability to perform unskilled work activity, as specified in the [RFC].

(R. at 24-25) (internal citation omitted and emphasis added).

An ALJ is not required to wholly adopt every limitation identified in a medical opinion if it is not supported by the evidence or is inconsistent with the medical evidence of record. *See Webster v. Kijakazi*, 19 F.4th 715, 719 (5th Cir. 2021). Here, the ALJ specifically considered the psychological consultative examination assessment, its diagnosis of unspecified bipolar and related disorder, and its assessment that Plaintiff was likely able to complete simple and some complex tasks in an appropriate manner, but she noted that it did not provide any specific limitations or vocational restrictions to include in the RFC. (R. at 25); *see Webster*, 19 F.4th at 719 ("Though the ALJ neither adopted the state agency report verbatim nor accepted the testimony of Dr. Small, it cannot be said that his decision was not based on substantial evidence or that he improperly applied the relevant legal standards."); *see also*, *e.g., Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981) ("[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."); *Cornejo v. Colvin*, No. EP-11-CV-470-RFC, 2013 WL 2539710, at *9 (W.D. Tex. June 7, 2013) ("[T]he limitations on which the RFC is based are not

13

required to be included verbatim in the RFC or in a hypothetical to the vocational expert."); *Jones v. Astrue*, No. 3:11-CV-3416-M-BH, 2013 WL 1293900, at *17-18 (N.D. Tex. Mar. 7, 2013), *adopted by*, 2013 WL 1296503 (N.D. Tex. Mar. 29, 2013) (finding that the ALJ's failure to incorporate the "exact language" of the psychiatric review technique into the RFC did not require remand in absence of showing of prejudice). The ALJ did not err when assessing Plaintiff's alleged absenteeism because she was entitled to weigh the evidence against other objective findings, including the opinion evidence available and the record as a whole. *See Walker v. Barnhart*, 158 F. App'x 534, 535 (5th Cir. 2005) (quoting *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000)). Although SAPC Tendler found that Plaintiff was "able to maintain attendance and complete a normal workweek and maintain pace with occasional absences", he also found she was able to "maintain an acceptable level of attendance". (R. at 141-42.) Moreover, even if SAPC Tendler's opinion supports a limitation of two or more absences per month, Plaintiff's "burden is not to highlight evidence contrary to the ALJ's ruling, but to show that there is no substantial evidence supporting the ALJ's decision." *Jones v. Saul*, 2021 WL 2895867, at *5 (N.D. Tex. July 9, 2021).

Plaintiff also argues that the ALJ's "silence" on SAPC Tendler's "occasional absences" limitation suggests that the ALJ did not consider it, precluding meaningful review and requiring remand. (*Id.* at 8, 11.) She relies on two out-of-circuit cases from Alabama. (*Id.* at 12 (citing *Dease v. Kijakazi*, No. 2:20-CV-394-KFP, 2022 WL 428173 (M.D. Ala. Feb. 11, 2022) (unpublished), and *Walker v. Saul*, 33 F. Supp. 3d 1055 (M.D. Ala. Aug. 27, 2020)). In *Dease*, the district court found that meaningful review was precluded because the ALJ had found persuasive two medical opinions with conflicting opinions as to the claimant's absenteeism, the RFC determination did not account for the claimant's absenteeism, and there was no indication of which portions of the opinions the ALJ credited. 2022 WL 428173, at *4. In *Walker*, the district court found that while

14

the ALJ found persuasive a doctor's opinion that the claimant was moderately restricted in her ability to concentrate, persist, or maintain pace and could therefore only concentrate for two-hour periods, he failed to include that limitation in the claimant's RFC or explain why it was omitted. 33 F. Supp. 3d at 1059-61.

These out-of-circuit cases "[are] not binding on this court, and [they] ha[ve] not been cited as persuasive authority in any case within the Fifth Circuit", however. *Guidry v. Comm'r of Soc. Sec.*, No. CV 15-1857, 2016 WL 4574576, at *7 (W.D. La. Aug. 9, 2016), *report and recommendation adopted*, No. CV 15-1857, 2016 WL 4626248 (W.D. La. Aug. 31, 2016). They are also distinguishable. Here, the ALJ did not find persuasive two conflicting opinions as to Plaintiff's alleged absenteeism as in *Dease*; the ALJ explicitly indicated which portion of SAMC Tendler's opinion she credited, i.e., the findings consistent with unskilled work, and she incorporated those related limitations into the RFC. (R. at 17-18, 24-25); *cf. Dease*, 2022 WL 428173, at *4. As for *Walter*, the ALJ never found persuasive SAPC Tendler's specific opinion that she would have occasional absences; the ALJ was therefore not required to incorporate any "occasional absences" limitation into the RFC determination or explain why it was omitted. (R. at 17-18, 24-25.); *cf. Walter*, 33 F. Supp. 3d at 1059.

Plaintiff further argues that the "[t]he decision in this case … contains no … explanation" as to why the ALJ rejected SAPC Tendler's opinion about Plaintiff's "occasional absences". (doc. 23 at 11.) She relies on SSR 96-8p for the premise that "*the adjudicator must explain why the opinion was not adopted*". (*Id.*) (emphasis in original). In the Fifth Circuit, an ALJ's RFC decision can be supported by substantial evidence even if she does not specifically discuss all the evidence that supports her decision or all the evidence that she rejected. *Falco*, 27 F.3d at 163-64; *see Price v. Astrue*, 401 F. App'x 985, 986 (5th Cir. 2010) (finding that "[t]he ALJ does not need to comment

on every piece of evidence, only must build an accurate and logical bridge between the evidence and the final determination"); *Perez*, 777 F.2d at 302 (stating that the ALJ "is responsible for assessing the medical evidence and determining the claimant's [RFC]"). The ALJ did not err under SSR 96-8p because she was not required to explain why she rejected any of SAPC Tendler's opinion statements. (doc. 23 at 11); SSR 96-8p, 1996 WL 374184.

Finally, Plaintiff points to the VE's testimony on employers' tolerance for absenteeism. (doc. 23 at 13.) As noted, the VE considered on cross-examination a modified first or second hypothetical individual who, because of her health problems, would occasionally be absent about two days per month. (R. at 80.) She opined that in Texas, an employee "can't miss any time" during the first 60 to 90 days on a job (e.g., probationary period) or miss more than two workdays per month post-probationary period. (*Id.*) Nevertheless, the ALJ could properly reject portions of the VE's testimony that were based on hypotheticals that she subsequently found unsupported by the medical evidence. *See Owens v. Heckler*, 770 F.2d 1276, 1282 (5th Cir. 1985).

Because "[t]he ALJ is solely responsible for determining a claimant's RFC, including whether to accept or reject medical opinions on a claimant's ability to perform work-related activities", she was free to discount SAPC Tendler's opinion about occasional absences based on a lack of supporting medical evidence of record. *See McCool v. Saul*, No. 3:19-CV-00393, 2020 WL 4905501, at *3 (S.D. Tex. Aug. 20, 2020), *report and recommendation adopted*, No. 3:19-CV-00393, 2020 WL 5518626 (S.D. Tex. Sept. 14, 2020) (citing *Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012)); *see also* 20 C.F.R. §§ 404.1545, 404.1546. The evidence shows that the ALJ expressly incorporated the portions of SAPC Tendler's opinion as to unskilled work that were supported by the record and were consistent with the other medical opinion and other evidence of record. (doc. 23; R. at 17-18; *see* R. at 24-25 (finding that the psychological evidence at the hearing

level was "more [] consistent with moderate limitations in understanding, remembering, and applying information, and reasonably results in an ability to perform unskilled work")); *see Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) (finding, in part, that "the record does not support the suggestion that the ALJ ignored the reports of previous physicians who concluded that Muse suffered from significant physical and mental impairments"). Ultimately, substantial evidence in the record supports the ALJ's finding that Plaintiff's medical condition, including her mental impairments, restricted her RFC to unskilled work as described in the mental RFC finding, i.e., she can understand, remember, and carry out simple tasks with short, simple instructions; make simple work-related decisions or judgments; maintain attention, concentration, and pace sufficiently to perform simple work tasks and can tolerate occasional workplace changes; and have occasional interaction with general public. (R. at 25.) "The court does not reweigh the evidence in the record, try the issues de novo, or substitute its judgment" for that of the Commissioner. *See Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000) (citing *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)); *see also Greenspan*, 38 F.3d at 236 (same). Because the ALJ was not required to adopt SAPC Tendler's opinion about occasional absences or explain why she rejected it, and she relied on the medical opinion and other evidence in the record in making her RFC determination, her assessment was supported by substantial evidence. (R. at 17-18; doc. 23 at 10); *see Webster*, 19 F.4th at 719. Remand is not required on this issue, and Plaintiff has not shown that it is warranted on any other basis.

## IV.   CONCLUSION

The Commissioner's decision is **AFFIRMED**.

**SO ORDERED** on this 7th day of August, 2023.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE